# 21-0347-cv

## United States Court of Appeals

*for the*

## Second Circuit

JOSEPH NOTO, GARDEN STATE TIRE CORP., STEPHENS JOHNSON,
Individually and on Behalf of All Others Similarly Situated,

*Plaintiffs-Appellants,*

— v. —

22ND CENTURY GROUP, INC., HENRY SICIGNANO, III,
JOHN T. BRODFUEHRER,

*Defendants-Appellees.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

CHARLES C. RITTER, JR.
DUKE, HOLZMAN, PHOTIADIS &
  GRESENS LLP
701 Seneca Street, Suite 750
Buffalo, New York 14210
(716) 855-1111

JOHN A. TUCKER
FOLEY & LARDNER LLP
One Independent Drive, Suite 1300
Jacksonville, Florida 32202
(904) 359-2000

— and —

JONATHAN H. FRIEDMAN
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
(212) 682-7474

*Attorneys for Defendants-Appellees*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee 22nd Century Group, Inc., through its undersigned counsel, states that it is a publicly-held company. 22nd Century Group, Inc. further states that it has no corporate parent and no other publicly-held corporation owns 10% or more of its stock. It also has no affiliates or subsidiaries that are publicly held.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................................ i

STATEMENT OF THE ISSUES.................................................................1

STATEMENT OF THE CASE.................................................................2

STATEMENT OF FACTS ..................................................................3

    I.     The Parties .........................................................................3

    II.    The Amended Complaint's Allegations ...................................3

           A.     Promotional Internet Articles ...........................................6

           B.     The Alleged Investigation ................................................7

SUMMARY OF THE ARGUMENT .......................................................9

STANDARD OF REVIEW ................................................................11

ARGUMENT ..................................................................................12

    I.     The District Court Correctly Held 22nd Century Had No Duty to Disclose IRTH's Alleged Payments to Third-Party Authors, or the Alleged SEC Investigation. ....................................................13

           A.     The Third-Party Authors of Internet Articles Had the Exclusive Duty to Disclose Any Payment They Allegedly May Have Received, and 22nd Century Had No Duty to Disclose. ..........15

                1.  Because Defendants Did Not Make the Statements in the Articles, They Are Not Responsible for Any Alleged Omissions Regarding Payments from those Articles. ................................15

                2.  The Company Had No Duty to Disclose in its SEC Filings that Internet Authors May Receive, but Not Disclose, Alleged Payments for Articles about 22nd Century...............................19

           B.     22nd Century Was Not Required to Disclose the Alleged SEC Investigation..............................................................24

           C.     The Press Releases Contain No Actionable Misstatements or Omissions..............................................................27

    II.    The District Court Correctly Found that the Alleged Conduct Did Not Constitute Market Manipulation. ..........................................29

    III.   Because Plaintiffs' Failed to Plead the Requisite Violation of Rule 10b-5, the Court Appropriately Dismissed the Section 20(a) Claim...................34

IV.   Plaintiffs Cannot Establish Scienter or Loss Causation. ..........................34

    A.   Plaintiffs' Perfunctory Scienter Allegations are Insufficient. ........35

       1.  Plaintiffs Have Not Pled Motive and Opportunity to Defraud. 36

       2.  Plaintiffs Have Not Pled Conscious Misbehavior or Recklessness.................................................................................40

       3.  Plaintiffs' Reliance on the Core Operations Doctrine Fails. ....43

    B.   The Amended Complaint Does Not Adequately Allege Loss Causation....................................................................................46

V.   Dismissal with Prejudice Was Proper. ....................................................49

CONCLUSION ......................................................................................................52

iii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acito v. IMCERA Grp., Inc.*,
   47 F.3d 47 (2d Cir. 1995) ..................................................................36

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
   93 F. Supp. 2d 424 (S.D.N.Y. 2000) .................................................37

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009).......................................................................12

*In re AT&T/DirecTV Now Sec. Litig.*,
   No. 19-CV-2892 (VEC), 2020 WL 4909718 (S.D.N.Y. Aug. 18, 2020)...........39

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) .........................................................*passim*

*Barrie v. Intervoice-Brite, Inc.*,
   397 F.3d 249 (5th Cir.), *opinion modified on denial of reh'g*, 409 F.3d
   653 (5th Cir. 2005).............................................................................38

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)...........................................................................13

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................12, 13, 45

*In re BioScrip, Inc. Sec. Litig.*,
   95 F. Supp. 3d 711 (S.D.N.Y. 2015) ..........................................27, 28

*Brady v. Top Ships Inc.*,
   No. 17-CV4987 (BMC), 2019 WL 3553999 (E.D.N.Y. Aug. 5, 2019)
   *aff'd sub nom. Onel v. Top Ships, Inc.*, 806 F. App'x 64 (2d Cir. 2020)............27

*In re Cabletron Sys., Inc.*,
   311 F.3d 11 (1st Cir. 2002)................................................................44

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*,
   850 F.3d 58 (2d Cir. 2017) ................................................................33

iv

*In re China Valves Tech. Sec. Litig.*,
   979 F. Supp. 2d 395 (S.D.N.Y. 2013) ..........................................................25, 26

*City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat., PLC*,
   423 F. Supp. 2d 348 (S.D.N.Y. 2006) .................................................................41

*Cortina v. Anavex Life Scis. Corp.*,
   No. 15-CV-10162, 2016 WL 7480415 (S.D.N.Y Dec. 12, 2016)..............*passim*

*In re CytRx Corp. Sec. Litig.*,
   2015 WL 5031232 .........................................................................17, 21, 22, 41

*Dura Pharm., Inc. v. Broundo*,
   544 U.S. 336 (2005)............................................................................................13

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
   553 F. 3d 187 (2d Cir. 2009) ...................................................................34, 39, 41

*In re Emex Corp. Sec. Litig.*,
   No. 01 CIV. 4886, 2002 WL 31093612 (S.D.N.Y. Sept. 18, 2002) ..................36

*Empire Merchants, LLC v. Reliable Churchill LLLP*,
   902 F.3d 132 (2d Cir. 2018) ...............................................................................49

*In re Ferrellgas Partners, L.P., Sec. Litig.*,
   No. 16 CIV. 7840, 2018 WL 2081859 (S.D.N.Y. Mar. 30, 2018),
   *aff'd*, 764 F. App'x 127 (2d Cir. 2019) ............................................43, 48, 49, 50

*In re Ferroglobe PLC Sec. Litig.*,
   No. 1:19-CV-00629 (RA), 2020 WL 6585715 (S.D.N.Y. Nov. 10, 2020)........49

*Fezzani v. Bear, Stearns & Co. Inc.*,
   716 F.3d 18 (2d Cir. 2013) .................................................................................16

*Foley v. Transocean Ltd.*,
   861 F. Supp. 2d 197 (S.D.N.Y. 2012) ...........................................................38, 39

*Food Holdings Ltd. v. Bank of Am. Corp.*,
   423 F. App'x 73 (2d Cir. 2011) ..........................................................................48

*Fredrick v. Mechel OAO*,
   475 Fed. App'x 353 (2d Cir. 2012) ....................................................................42

*Fund Liquidation Holdings LLC v. Bank of Am. Corp.*,
991 F.3d 370 (2d Cir. 2021) .................................................................11

*In re Galectin Therapeutics, Inc. Sec. Litig.*,
843 F.3d 1257 (11th Cir. 2016) ..................................................*passim*

*In re Galena Biopharma, Inc. Sec. Litig.*,
117 F. Supp. 3d 1145 (D. Or. 2015) ......................................18, 19, 21

*Gamm v. Sanderson Farms, Inc.*,
944 F.3d 455 (2d Cir. 2019) .............................................................12

*Garvey v. Arkoosh*,
354 F. Supp. 2d 73 (D. Mass. 2005)..............................................19, 20

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
639 F. App'x 664 (2d Cir. 2016) .....................................................16

*In re Gilat Satellite Networks, Ltd.*,
No. 02 Civ. 1510, 2005 WL 2277476 (E.D.N.Y. Sept. 19, 2005) ....................36

*Harris v. AmTrust Fin. Servs., Inc.*,
135 F. Supp. 3d 155 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir.
2016) .....................................................................................45

*In re HEXO Corp. Sec. Litig.*,
No. 19 CIV. 10965 (NRB), 2021 WL 878589 (S.D.N.Y. Mar. 8, 2021)...........43

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
251 F. Supp. 3d 596 (S.D.N.Y. 2017) .........................................24, 25

*Janus Capital Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)........................................................................15, 17

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001) .................................................35, 37, 38

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005) .........................................29, 30, 45, 47

*In re Liberty Tax, Inc. Sec. Litig.*,
828 F. App'x 747 (2d Cir. 2020) ...............................................11, 50

vi

*In re Lions Gate Ent. Corp. Sec. Litig.*,
  165 F. Supp. 3d 1 (S.D.N.Y. 2016) ...............................................9, 24

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015) ...................................................49

*MAZ Partners LP v. First Choice Healthcare Sols., Inc.*,
  No. 619CV619ORL40LRH, 2020 WL 1072582 (M.D. Fla. Feb. 14,
  2020) *adopting Report & Recommendation*, *MAZ Partners LP v. First
  Choice Healthcare Sols., Inc.*, No. 619CV619ORL40LRH, 2019 WL
  5394011 (M.D. Fla. Oct. 16, 2019) ...........................................21, 22

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) ..............................................46

*Mishkin v. Ageloff*,
  No. 97 Civ. 2690, 1998 WL 651065 (S.D.N.Y. Sept. 23, 1998)........................33

*In re Mylan N.V. Sec. Litig.*,
  No. 16-CV-7926 (JPO), 2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018) ......25, 26

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) ..............................................35, 39, 40

*Okla. L. Enf't Ret. Sys. v. Papa John's Int'l, Inc.*,
  No. 18-CV-7927 (KMW), 2021 WL 371401 (S.D.N.Y. Feb. 3, 2021) .............50

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  135 S. Ct. 1318 (2015)........................................................26

*In re Omnicom Grp., Inc. Sec. Litig.*,
  597 F.3d 501 (2d Cir. 2010) ...............................................46

*In re Openwave Sys. Sec. Litig.*,
  528 F. Supp. 2d 236 (S.D.N.Y. 2007) ..............................................47

*In re Parmalat Sec. Litig.*,
  375 F. Supp. 2d 278 (S.D.N.Y. 2005) ..............................................47

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax
  Fin. Holdings Ltd.*,
  886 F. Supp. 2d 328 (S.D.N.Y. 2012) ..............................................46

*In re PolarityTE, Inc., Sec. Litig.*,
No. 2:18-CV-00510, 2020 WL 6873798 (D. Utah Nov. 22, 2020) ..................27

*Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago ex rel
Policemen's Annuity & Benefit Fund of Chicago v. FXCM Inc.*,
767 Fed. App'x 139 (2d Cir. 2019) ....................................................................34

*In re PXRE Grp., Ltd., Sec. Litig.*,
600 F. Supp. 2d 510 (S.D.N.Y. 2009) ...............................................................36

*In re Quintel Ent. Inc. Sec. Litig.*,
72 F. Supp. 2d 283 (S.D.N.Y. 1999) ..................................................................36

*Rabkin v. Lion Biotech., Inc.*,
No, 17-CV-02086, 2018 WL 905862 (N.D. Cal. Feb. 15, 2018)...............*passim*

*In re Refco, Inc. Sec. Litig.*,
503 F. Supp. 2d 611 (S.D.N.Y. 2007) ...............................................................42

*San Leandro Emergency Med. Grp. Profit Sharing v. Philip Morris Cos.,
Inc.*,
75 F.3d 801 (2d Cir. 1996) ................................................................................36

*Santa Fe Indus., Inc. v. Green*,
430 U.S. 462 (1977)......................................................................................28, 29

*SEC v. Contrarian Press, LLC*,
No. 16-CV-6964, 2019 WL 1172268 (S.D.N.Y. Mar. 13, 2019)......................32

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir. 1994) ..............................................................................35

*Slayton v. Am. Exp. Co.*,
604 F.3d 758 (2d Cir. 2010) ..............................................................................11

*In re Sterling Foster & Co., Inc. Sec. Litig.*,
222 F. Supp. 2d 289 (E.D.N.Y. 2002) ...............................................................45

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
552 U.S. 148 (2008)............................................................................................13

*Stratte-McClure v. Morgan Stanley*,
776 F.3d 94 (2d Cir. 2015) ................................................................................14

*Suez Equity Invs., L.P. v. Toronto-Dominion Bank*,
250 F.3d 87 (2d Cir. 2001) ...................................................................47

*Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*,
531 F.3d 190 (2d Cir. 2008) ................................................................44

*TechnoMarine SA v. Giftports, Inc.*,
758 F.3d 493 (2d Cir. 2014) ................................................................49

*Tellabs v. Makor Issues & Rights*,
551 U.S. 308 (2007)......................................................................34, 35

*Thesling v. Bioenvision, Inc.*,
374 F. App'x 141 (2d Cir. 2010) ........................................................14

*In re Time Warner Inc. Sec. Litig.*,
9 F.3d 259 (2d Cir. 1993) ............................................................13, 37

*In re Tingling*,
990 F.3d 304 (2d Cir. 2021) ...............................................................34

*In re Twinlab Corp. Sec. Litig.*
103 F. Supp. 2d 193 (E.D.N.Y. 2000) ...............................................38

*Ulbricht v. Ternium S.A.*,
No. 18CV6801PKCRLM, 2020 WL 5517313 (E.D.N.Y. Sept. 14, 2020)........25

*In re VEON Ltd. Sec. Litig.*,
No. 15-CV-08672 (ALC), 2017 WL 4162342 (S.D.N.Y. Sept. 19, 2017) ........44

*In re Veon Ltd. Sec. Litig.*,
No. 15-CV-08672 (ALC), 2021 WL 930478 (S.D.N.Y. Mar. 11, 2021)...........24

*In re Vivendi Universal, S.A. Sec. Litig.*,
381 F. Supp. 2d 158 (S.D.N.Y. 2003) ...............................................37

*Woolgar v. Kingstone Cos., Inc.*,
477 F. Supp. 3d 193 (S.D.N.Y. 2020) ..........................................42, 43

*In re WorldCom, Inc. Sec. Litig.*,
294 F. Supp. 2d 392 (S.D.N.Y. 2003) ...............................................41

ix

*In re WorldCom, Inc. Sec. Litig.*
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ............................................................47

*In re XP Inc. Sec. Litig.*,
   No. 20-CV-1502 (BMC), 2021 WL 861917 (E.D.N.Y. Mar. 8, 2021)..............25

*Zagami v. Cellceutix Corp.*,
   No. 15 CIV. 7194 (KPF), 2016 WL 3199531 (S.D.N.Y. June 8, 2016) ............16

**Statutes**

15 U.S.C.
   § 77q(b) .............................................................................................15, 19, 20, 21
   § 78j(b) ...........................................................................................................1, 16
   § 78t(a) ..........................................................................................................*passim*
   § 78u-4(b).............................................................................................12, 13, 34

Private Securities Litigation Reform Act ("PSLRA").....................................*passim*

**Other Authorities**

17 C.F.R. § 240.10b-5.............................................................................................*passim*

FED. R. CIV. P.
   Rule 9(b) ...............................................................................................12, 28, 34, 38
   Rule 12(b)(6)...............................................................................................................11

x

## STATEMENT OF THE ISSUES

1. Whether the District Court properly dismissed claims that 22nd Century Group, Inc. ("22nd Century" or the "Company") had a duty, pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), SEC Rule 10b-5(b), 17 C.F.R. § 240.10b-5 ("Rule 10b-5"), to disclose: (a) that third-party authors allegedly received payment from a third-party investment relations company, IRTH Communications ("IRTH"), for articles written about 22nd Century; and (b) the existence of an alleged SEC investigation into accounting weaknesses in addition to 22nd Century's disclosure of the accounting weaknesses themselves.

2. Whether the District Court properly dismissed Plaintiffs' claim that 22nd Century's supposed failure to disclose that IRTH purportedly paid third-party authors for articles constituted a scheme to defraud investors under Rule 10b-5(a) and (c).

3. Whether the District Court properly dismissed claims against Henry Sicignano, III and John Brodfuehrer, 22nd Century's former CEO and CFO, respectively, for control person liability under Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a) ("Section 20(a)") because Plaintiffs failed to establish the predicate violation of Rule 10b-5.

4. Whether Plaintiffs' failure to plead scienter and loss causation independently justify affirming the District Court's order dismissing Plaintiffs' claims.

1

5. Whether the District Court appropriately denied Plaintiffs' perfunctory request for leave to amend the Amended Class Action Complaint (the "Amended Complaint").

## STATEMENT OF THE CASE

The District Court (Sinatra, J) found Plaintiffs had not, and could not, state a claim under Rule 10b-5(b) because 22nd Century had no duty to disclose that a third-party investor relations firm, IRTH, allegedly paid authors to write articles about 22nd Century, nor did the Company have any duty to disclose an alleged SEC investigation into certain accounting weaknesses when the Company had fully disclosed these weaknesses, and their remediation, in prior public filings. SPA-4. Likewise, the District Court properly rejected Plaintiffs' claims that 22nd Century's hiring of IRTH, and IRTH's alleged payment for articles about the Company, were a scheme to defraud investors actionable under Rule 10b-5(a) and (c). *Id.* In light of the Plaintiffs' failure to show a violation of Rule 10b-5, the District Court also denied Plaintiffs' claims for control person liability under Section 20(a). SPA-5. Further, even though the District Court did not need to reach these issues, the District Court's dismissal could also be affirmed because the Amended Complaint failed to plead scienter and loss causation. Because the District Court correctly found that the actions alleged in the Amended Complaint simply do not, and could not, constitute securities fraud, it denied the Plaintiffs' one-sentence request for leave to amend the

2

Amended Complaint. SPA-5, n.2. Plaintiffs now seek review of the District Court's Summary Order. SPA-1-5.

## STATEMENT OF FACTS

### I.    The Parties

22nd Century is a small company headquartered in Williamsville, New York, focused on plant biotechnology that regulates the amount of nicotine in tobacco and cannabinoids in hemp. A-16, 24 ¶¶ 2, 34. From March 2015 to July 2019, Mr. Sicignano served as 22nd Century's CEO. A-22, 24 ¶¶ 25, 35. From April 2013 to December 2019, Mr. Brodfuehrer served as 22nd Century's CFO and Treasurer. A-24 ¶ 36. Lead Plaintiffs, 22nd Century Investor Group ("Plaintiffs"), are investors who allegedly purchased 22nd Century's stock during the proposed "class period" of February 18, 2016 through July 31, 2019. A-15.

### II.    The Amended Complaint's Allegations

Plaintiffs' Amended Complaint alleges that 22nd Century retained an investor relations firm, IRTH, which in turn allegedly paid third-party authors to create and post internet articles promoting 22nd Century. A-19, 29, 34 ¶¶ 15, 53, 70. Plaintiffs do not contend that the substantive content of the alleged paid promotional articles was improper or contained inaccurate or false information. *See generally* A-15-93. Indeed, Plaintiffs allege that the articles largely reiterated or parroted the content of the Company's own press releases, which are not alleged to be false or misleading. A-16, 35 ¶¶ 5, 71. Instead, Plaintiffs allege that some of the third-party authors did

3

not disclose the payments they allegedly received. A-34 ¶ 70. Plaintiffs contend 22nd Century should have disclosed IRTH's purported payments to the third-party authors, and that 22nd Century did not disclose the alleged payments to carry out a scheme to inflate the value of the Company's stock. A-32-35.

Plaintiffs also contend that the Company should have disclosed a purported SEC investigation relating to issues regarding the Company's segregation of financial reporting duties in 2016. A-75-77. However, Plaintiffs admit that the Company *fully disclosed and remediated* this accounting concern in 2016 by adding additional personnel to appropriately segregate certain accounting responsibilities. *Id.*[1] Further, Plaintiffs do not, and cannot, allege that this accounting concern led to any penalties or fines, involved misconduct, or required any adjustment to the Company's financial statements.

---

[1] Specifically, 22nd Century disclosed that its "internal controls over financial reporting were not effective and that material weaknesses exist in our internal control over financial reporting. The material weakness consists of controls associated with segregation of duties whereby individuals have incompatable [sic] duties within the financial reporting area. To address the material weakness we performed additional analyses and other post-closing procedures to ensure that our consolidated financial statements were prepared in accordance with accounting principles generally accepted in the United States of America (U.S. GAAP)." A-75-76 ¶ 193 (quoting 22nd Century's 2015 10-K, filed February 28, 2016. Subsequently, the Company disclosed the completion of its remediation plan, stating in its 2016 10-K, filed March 8, 2017, that "[d]uring the second quarter of 2016, we hired an additional accounting employee to assist with remediating our material weakness associated with a lack of segregation of duties. In addition, subsequent to the end of the second quarter of 2016, we engaged a third-party consultant to assist with material weakness remediation and to assist with our controls and procedures over our financial reporting. Except as set forth herein, there were no changes in the Company's internal control over financial reporting during the second quarter of 2016 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting." A-77 ¶ 197.

Based on the foregoing allegations, the Amended Complaint asserts three claims: Count I attempts to state a claim under Rule 10b-5(b) for alleged material misstatements in, or omissions from, the Company's SEC filings and two press releases issued on October 26, 2018 and April 18, 2019 (the "Press Releases") based on the non-disclosure that IRTH allegedly paid the third-party authors and the non-disclosure of the alleged SEC investigation; Count II attempts to state a claim for alleged market manipulation under Rule 10b-5(a) and (c) based on the articles' alleged nondisclosure of payments; and Count III alleges control person liability under Section 20(a) against Messrs. Sicignano and Brodfuehrer. The Amended Complaint's allegations do not, and cannot, amount to securities fraud, thus the District Court dismissed the Amended Complaint with prejudice.

While the District Court did not need to reach the issue, the Amended Complaint also fails to plead the requisite scienter, an independent basis for dismissal. The Amended Complaint does not allege that: (1) Defendants attempted to profit personally in any way from the alleged scheme; (2) Defendants were even aware that the articles' authors failed to disclose payments, much less sought to prevent such disclosures; or (3) the nondisclosure of an alleged SEC investigation reflected conscious misbehavior or recklessness, especially where Plaintiffs also allege the Company made accurate, detailed disclosures of the subject of the alleged investigation. Similarly, the District Court did not address the Amended Complaint's

failure to allege, as required, that Plaintiffs' alleged losses were caused by the nondisclosure of payments or an alleged SEC investigation. This failure provides another independent ground for affirmance of the dismissal.

## A. Promotional Internet Articles

Plaintiffs rely on a confidential witness to allege that, from February 2017—a year after the class period began—to October 2017, Mr. Sicignano retained IRTH to arrange the publication of articles about the Company. A-21, 33 ¶¶ 22, 67. The articles allegedly parroted 22nd Century's own press releases, and neither the articles nor the press releases are alleged to contain any misleading, false, or overstated information. The Amended Complaint does not allege that Defendants themselves wrote, published, or reviewed the articles, or that Defendants knew the articles were missing payment disclosures by their authors. *See generally* A-66-72 ¶¶ 162-84. Indeed, Plaintiffs do not allege 22nd Century even had *any* contact with *any* of the authors or publishers.

Rather, Plaintiffs' claim is only that some of these articles did not disclose that the authors purportedly were paid by IRTH, or third parties hired by IRTH, 22nd Century was required to disclose that some authors allegedly were paid, and the absence of these disclosures artificially inflated the Company's stock price. A-66-72, 73-75 ¶¶ 162-84, 186-91. Plaintiffs contend 22nd Century carried out this purported scheme to raise stock prices so that the Company could issue a stock

6

offering, generating cash needed to run the Company. A-32 ¶ 64. According to Plaintiffs, some of the paid promotional articles inflated the Company's stock prices.[2] A-16 ¶ 3. Plaintiffs contend that, on February 2, 2018, when an anonymous short seller, "Fuzzy Panda," published a story revealing the supposed scheme, 22nd Century's stock price fell $0.35 per share. A-53-54 ¶¶ 130-31.[3] As discussed *infra*, the law is clear that any such disclosure duty resided exclusively with the authors, and not with 22nd Century.

## B. The Alleged Investigation

Also relying on a confidential witness, Plaintiffs allege that 22nd Century was investigated by the SEC in 2016 because of material weaknesses relating to segregation of duties in its accounting processes. A-27 ¶¶ 46-48.[4] Plaintiffs do not,

---

[2] Plaintiffs point to 23 internet articles published purportedly in conjunction with 22nd Century's supposed scheme to inflate its stock price, but allege increases in stock prices following only twelve of these articles. A-66-72 ¶¶ 162-84.

[3] Plaintiffs also point to three subsequent articles that merely restated the allegations in the February 2, 2018 story, but only two of these articles supposedly caused 22nd Century's stock price to drop. A-19, 55-58 ¶¶ 14, 135, 137-39, 143. Further, Plaintiffs contend that Mr. Sicignano's July 26, 2019 resignation for personal reasons somehow revealed the truth about the alleged promotional scheme or was a materialization of a concealed risk of the same. A-60 ¶¶ 151-52. Further, in their opening brief, Plaintiffs, for the first time, allege Mr. Brodfuehrer resigned in December 2019 because of "his role in the scheme." Dkt. 27 at 20, 50. This allegation is (a) preposterous; and (b) nowhere in the Amended Complaint. Thus, it should not be considered in deciding this appeal. Regardless, even if this allegation were pled, it would not amount to a corrective disclosure or materialization of a concealed risk.

[4] Additionally, in their opening brief, Plaintiffs, for the first time, contend 22nd Century did not disclose the SEC investigation to avoid decreasing the value of anticipated secondary stock offerings. Dkt. 27 at 4, 16. This allegation was entirely absent from the Amended Complaint, but regardless, would not alter the analysis or avoid the clear legal precedent that the Company had no duty to disclose the purported SEC investigation.

7

and cannot, contend the alleged accounting weaknesses were the result of misconduct of any kind, or caused any damages, fines, or other harm. Moreover, Plaintiffs acknowledge that the Company fully and contemporaneously disclosed these accounting issues and their 2016 remediation in its public filings —but contend that the Company also should have disclosed the alleged investigation. A-75-77 ¶¶ 192-98.[5]

The Amended Complaint alleges that the purported SEC investigation was revealed on October 25, 2018 when Fuzzy Panda published a short seller report explaining that the SEC denied a FOIA request for documents relating to the Company because production could interfere with ongoing enforcement proceedings. A-55-56 ¶¶ 136-37. Plaintiffs allege that 22nd Century's stock price decreased following the revelation of the alleged SEC investigation and perfunctorily assert that the *2018* and *2019* Press Releases, which stated that "22nd Century has not received any notice of, and the Company has no knowledge of, any enforcement proceeding against 22nd Century by the SEC or any other regulator" created a duty to disclose the alleged *2016* SEC investigation. A-57 ¶ 141.[6] As

---

[5] The Company further disclosed in its 2016 quarterly Form 10-Q filings that the Company was "subject to various claims and legal proceedings arising in the ordinary course of business. As of the date hereof, we are unable to currently assess whether the final resolution of any of such claims or legal proceedings may have a material adverse effect on us." *See* A-159, 195, 234.

[6] Further, Plaintiffs appear to allege that 22nd Century had a duty to, but did not, disclose that 22nd Century's former CEO, Joseph Pandolfino, was Fuzzy Panda (A-19-21, 57 ¶¶ 13, 17, 21, 140) and that Mr. Sicignano's disgruntled former assistant sent a letter to 22nd Century's Board of Directors regarding Mr. Sicignano's efforts to raise the Company's stock prices. A-21, 59 ¶¶ 22-23, 146-48.

explained below, and as held by the District Court, Plaintiffs' allegations do not state a claim.

## SUMMARY OF THE ARGUMENT

Plaintiffs attempt to manufacture a securities law violation out of alleged conduct that clear legal precedent establishes is not actionable. As the District Court properly held, the case law is clear that the responsibility for disclosing promotional payments lies *solely* with the articles' authors, not companies like 22nd Century. *See In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257 (11th Cir. 2016). Plaintiffs attempt to turn the permissible hiring of an investor relations firm that allegedly hired authors to place promotional articles into a scheme to defraud, but— *as Plaintiffs do not dispute*—there is nothing fraudulent, or even remotely improper, in hiring an investor relations firm, or placing promotional articles. *See Cortina v. Anavex Life Scis. Corp.*, No. 15-CV-10162, 2016 WL 7480415, at *5 (S.D.N.Y Dec. 29, 2016). And the law is clear that responsibility for disclosing alleged payments for those articles lies solely with the third-party authors who wrote them. Indeed, the Amended Complaint does not even allege that 22nd Century *knew* that any of these third-party articles were missing required payment disclosures.

---

Plaintiffs do not even attempt to explain how or why 22nd Century had a duty to disclose this information, or how its alleged non-disclosure impacted the Company's stock price.

Similarly, the District Court properly recognized that the case law also is clear that companies like 22nd Century have no duty to disclose "uncharged, unadjudicated wrongdoings" like the alleged SEC investigation (*see In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016) (citation and quotation marks omitted)), especially where the Company had in other public filings fully disclosed the alleged deficiencies and remediation. The Company's disclosure of accounting weaknesses, and their remediation, was complete and entirely accurate and thus cannot give rise to liability under Rule 10b-5(b).

For these reasons, the District Court correctly also held that Plaintiffs' failure to plead a primary violation of Rule 10b-5 required dismissal of their claim under Section 20(a) for control person liability.

The District Court's dismissal also can be affirmed on other grounds that were argued below, but which the District Court noted it did not need to address given the foregoing reasons for dismissal. This Court can and should affirm the dismissal on these grounds if the Court finds any errors in the District Court's express rulings.[7] *See CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 78 (2d Cir. 2017) ("It is well settled that [this Court] may affirm [a district court's decision] on any grounds for which there is a record sufficient to permit conclusions of law,

---

[7] Plaintiffs recognize that these grounds also would support affirmance by addressing and attempting to avoid these deficiencies. Dkt. 27, 40-52.

including grounds not relied upon by the district court."). Specifically, the dismissal should be affirmed because the Amended Complaint does not involve the type conduct that is required to allege scienter and loss causation, which are essential elements of a Rule 10b-5 claim. More specifically, Plaintiffs do not allege Messrs. Sicignano or Brodfuehrer benefited in a "concrete and personal way," or that their conduct constituted conscious misbehavior, highly unreasonable, or an extreme departure from the standard of ordinary care. The Amended Complaint also does not identify damages that are properly causally linked to the alleged misconduct. These failures provide additional grounds to affirm the District Court's dismissal.

Because 22nd Century's actions as described in the Amended Complaint were entirely consistent with Rule 10b-5, the District Court appropriately dismissed the Amended Complaint. Plaintiffs' perfunctory request for leave to amend, and even its opening brief, gave no indication how Plaintiffs' could fix the Amended Complaint's deficiencies. This is because amendment would be futile: There are no plausible facts that could show Defendants' conduct amounted to securities fraud. Thus, dismissal with prejudice was proper.

## STANDARD OF REVIEW

This Court "review[s] a district court's ruling on a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) *de novo*." *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010). While this Court generally

11

reviews denial of leave to amend for abuse of discretion (*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007)), if the denial is based solely on legal errors, the Court reviews denial of leave to amend *de novo*. *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 380 (2d Cir. 2021) ("[W]here, as here, [denials of leave to amend] were based on decisions of *pure law*, they are functionally reviewed *de novo*, as a decision premised on a legal error is necessarily an abuse of discretion." (emphasis added)); *but see In re Liberty Tax, Inc. Sec. Litig.*, 828 F. App'x 747, 754 (2d Cir. 2020) ("Finally, the Fund appeals the failure to afford it an opportunity to amend its complaint, *a claim we review only for abuse of discretion*. . . . denial [of leave to amend] is warranted when amendment would be futile. Here, nothing in the record suggests that another complaint could remedy *the legal deficiencies* set forth above. Accordingly, the district court did not abuse its discretion in failing to provide the Fund with leave to amend.") (citation and quotation marks omitted).[8]

## ARGUMENT

In a securities fraud case, plaintiffs alleging securities fraud must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("<u>PSLRA</u>"). "Rule 9(b) and the PSLRA require a securities fraud complaint to '. . . explain why the statements were

---

[8] All emphasis in quoted material herein is supplied unless otherwise noted.

fraudulent.'" *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). Plaintiffs must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). Further, to plead loss causation, the complaint must identify a corrective disclosure and plead "something beyond the mere possibility of loss causation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citation omitted). Additionally, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 547. Here, because Plaintiffs' allegations do not satisfy these pleading standards, the District Court properly dismissed the Amended Complaint with prejudice.

I.    **The District Court Correctly Held 22nd Century Had No Duty to Disclose IRTH's Alleged Payments to Third-Party Authors, or the Alleged SEC Investigation.**

To state a claim under Rule 10b-5(b), a plaintiff must allege: (1) a material misrepresentation or omission; (2) made by the defendants with scienter; (3) in connection with the purchase or sale of a security; (4) on which the plaintiff justifiably relied; (5) economic loss; and (6) a causal connection between the

misrepresentation or omission and the plaintiff's loss. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005); *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

Additionally, an omission is actionable only if disclosure of the omitted material fact is "necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading." 15 U.S.C. § 78u-4(b)(1)(B). "Silence, absent a duty to disclose, is not misleading under Rule 10b-5." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988). Issuers are "not required to disclose a fact merely because a reasonable investor would very much like to know that fact. Rather, *an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts*." *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993). Such a duty may arise "either: (1) expressly pursuant to an independent statute or regulation; or (2) as a result of the ongoing duty to avoid rendering existing statements misleading by failing to disclose material facts." *Thesling v. Bioenvision, Inc.*, 374 F. App'x 141, 143 (2d Cir. 2010); *see also Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 100–01 (2d Cir. 2015) (duty to disclose arises if "a corporate statement . . . would otherwise be inaccurate, incomplete, or misleading" without the disclosure).

As the District Court held, Count I of the Amended Complaint fails to satisfy these requirements. The District Court correctly found that Defendants had no duty

14

to disclose the information about which Plaintiffs complain, and Plaintiffs therefore cannot state a claim under Rule 10b-5(b).[9] Because the absence of a legal duty is a legal, and not a factual, determination, the District Court properly denied leave to amend.

**A.  The Third-Party Authors of Internet Articles Had the Exclusive Duty to Disclose Any Payment They Allegedly May Have Received, and 22nd Century Had No Duty to Disclose.**

**1.  Because Defendants Did Not Make the Statements in the Articles, They Are Not Responsible for Any Alleged Omissions Regarding Payments from those Articles.**

Authors, not issuers, are responsible for disclosing payments received for promotional articles:

> It shall be unlawful for any person, . . . *to publish, give publicity to, or circulate* any notice, circular, advertisement, newspaper, article, letter, investment service, or communication which, . . . describes such security for a consideration received or to be received, directly or indirectly, from an issuer, underwriter, or dealer, without fully disclosing the receipt, whether past or prospective, of such consideration and the amount thereof.

15 U.S.C. § 77q(b) ("Section 17(b)"). Plaintiffs attempt to avoid the clear import of this law by arguing 22nd Century "had ultimate authority of the articles' content" and thus was the "maker" of the statements contained therein. Dkt. 27 at 27. However, Plaintiffs' allegations do not, and cannot, establish Defendants had

---

[9] Because the Company's SEC filings contain no misstatements or omissions, Plaintiffs' claim that Messrs. Sicignano and Brodfuehrer's Sarbanes-Oxley certifications were false and misleading (Dkt. 27 at 38) necessarily fails.

"ultimate authority" over the articles. Thus, Defendants cannot be responsible for alleged omissions from those articles.

A prerequisite for Rule 10b-5(b) liability is "ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). The "ultimate authority" rule is "exemplified by the relationship between a speechwriter and a speaker. Even when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it." *Id*. at 143. In cases involving promotional articles, the promoted issuer is *not* the maker of statements in the articles. *See Galectin*, 843 F.3d at 1272.

In *Galectin*, the Court dismissed the plaintiffs' Rule 10b-5(b) claim based on promotional articles' failure to disclose payments. The Court held such claims cannot be based "on the content of, or the omissions in, the articles by stock promoters" because the defendant lacked "ultimate authority" over articles, despite allegations that the defendant "worked in conjunction with stock promoters to promote [defendant]'s stock" and timed the articles to coincide with the defendant's press releases. *Id.*; *see also Fezzani v. Bear, Stearns & Co. Inc*., 716 F.3d 18, 24-25 (2d Cir. 2013) (individual who assisted in fraudulent sale of securities could not be liable under Rule 10b-5(b); "an allegation of acts facilitating or even indispensable to a fraud is not sufficient to state a claim if those acts were not the particular

misrepresentations that deceived the investor," "only the person who communicates the misrepresentation is liable in private actions under Section 10(b)"); *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 639 F. App'x 664, 669 (2d Cir. 2016) (defendant not "maker" of statement despite input and approval); *cf. Zagami v. Cellceutix Corp.*, No. 15 CIV. 7194, 2016 WL 3199531, at *6 (S.D.N.Y. June 8, 2016) (defendant did not make statements in article that directly quoted defendant).[10]

Plaintiffs' attempt to convince this Court that Defendants "made" the statements in the articles by calling them "Defendants' articles" and alleging Defendants "reviewed, edited, and approved the articles." Dkt. 27 at 27. In reality, this is not, and cannot, be pled. The Amended Complaint alleges only the following: "Sicignano reviewed and approved statements in the Company's *press releases* as a matter of common practice, *thus* he reviewed and approved the articles before publication, either by closely reviewing the contents *of press releases* . . . *and/or* by reviewing and approving the articles themselves." A-35 ¶ 72; *see also* A-34 ¶ 68 (alleging confidential witness was "sure that" Mr. Sicignano "review[ed], edit[ed], *and/or* approv[ed]" third-party articles because *he reviewed Company press releases*); A-42 ¶ 100 (alleging Mr. Sicignano reviewed "statements furnished by

---

[10] Even cases Plaintiffs cite confirm Defendants are not the "makers" of statements in the articles under *Janus*. *See, e.g.*, *In re CytRx Corp. Sec. Litig.*, No. CV 14-1956, 2015 WL 5031232, at *6-7 (C.D. Cal. July 13, 2015) (defendants not "makers" of statements contained in paid articles because plaintiffs "merely allege[d] that these articles were drafted by [paid authors] and then reviewed, edited and approved" by defendants).

Defendants," such as Company press releases, that were parroted by third-party articles). The Amended Complaint thus pleads only that Mr. Sicignano reviewed the Company's own press releases, from which the third-party authors then parroted. It does not follow that reviewing the Company's press releases somehow rendered Mr. Sicignano responsible for any omitted payment disclosures from the articles subsequently authored by third parties simply because those articles included information from Company press releases.

In support of their argument that such conduct establishes that Defendants had "ultimate authority" over these third-party articles (Dkt. 27 at 27), Plaintiffs rely on two wholly inapposite cases from district courts in the Ninth Circuit. In *Rabkin v. Lion Biotechnologies, Inc.*, No, 17-CV-02086, 2018 WL 905862, at *16-17 (N.D. Cal. Feb. 15, 2018), the individual defendants were executives of the issuer *and* founders of the stock promotion company the issuer paid to promote its stock. The *Rabkin* plaintiffs also pled facts that: (i) defendants expressly instructed authors not to disclose their payments; (ii) "had final say" on the articles' content and publication; (iii) a "lucrative agreement" existed between the corporate defendant and promotional company; and (iv) "specific instances" of defendants concealing compensation to authors. *Id.* at *2, 7, 17. Likewise, in *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145 (D. Or. 2015), the plaintiffs included statements from an "author," who was actually an investigator, and attached emails showing the

18

defendants actually reviewed the articles before publication. *Id.* at 1165-68. Notably, *Galena dismissed* claims against one defendant, Dunlap, even though he—unlike Defendants here—was "included on emails . . . attaching published articles," because the complaint contained "no particularized allegations that Dunlap knew [the investor relations firm] was causing promotional publications to be published in a misleading fashion or without the required disclosures." *Id.* at 1169.

In stark contrast to the foregoing cases, Plaintiffs here conclude, without any factual support, that by carefully preparing the Company's press releases, Defendants must have had authority over the statements in the later articles that drew content from the press releases. However, the Amended Complaint alleges no facts establishing Defendants even *saw* the articles or knew that the articles omitted required payment disclosures, much less controlled whether the articles included any required disclosures. Plaintiffs' speculative conjecture without particularized facts does not state a claim for securities fraud that is "plausible on its face," let alone permissible under the PSLRA.

> **2.    The Company Had No Duty to Disclose in its SEC Filings that Internet Authors May Receive, but Not Disclose, Alleged Payments for Articles about 22nd Century.**

As a district court in this Circuit explained in dismissing an almost identical claim filed by the same law firm that filed the Amended Complaint, "Section 17(b) of the Securities Exchange Act imposes a duty to disclose payment on the promoter

who receives payment, but *not* on the issuer who hired and paid the promoter." *Cortina*, 2016 WL 7480415 at *5 (emphasis in original); *see also Galectin*, 843 F.3d at 1273 (upholding district court's dismissal of 10b-5(b) claims alleging failure to disclose in SEC filings paid stock promotions because "[t]here is no statutory duty to disclose imposed on the issuer—here [the defendant] which paid for the promotional articles or activities"); *Garvey v. Arkoosh*, 354 F. Supp. 2d 73, 83 (D. Mass. 2005) (dismissing plaintiff's claim for securities fraud alleging defendant's failure to disclose that it paid for promotional articles because defendant had no duty to disclose payments).

*Cortina* dismissed a Rule 10b-5(b) claim because the plaintiffs there failed to identify any duty that obligated defendants to disclose that defendants paid for promotional articles. 2016 WL 7480415 at *5. In so holding, the Court noted that "Section 17(b) of the Securities Exchange Act imposes a duty to disclose payment on the promoter who receives payment, but not on the issuer who hired and paid the promoter." *Id*. The Court explained "'[f]or the Court to impose a duty to disclose' on stock issuers in circumstances like those here 'would encroach on the drafter's decision to create a duty to disclose on analysts, such as stock promoters, rather than the issuer of a regulated security.'" *Id*. (quoting *In re Galectin Therapeutics, Inc. Sec. Litig.*, 157 F. Supp. 3d 1230, 1237-38 (N.D. Ga. 2015) (alteration in *Cortina*).

Here, like the defendants in *Cortina*, *Galectin*, and *Garvey*, 22nd Century had no duty to disclose that the third-party authors who IRTH may have paid for articles about the Company, may have failed to disclose such payments. Rather, Section 17(b) imposes such a duty only upon the third party receiving payment and publishing the articles, not IRTH and certainly not 22nd Century. Thus, Plaintiffs' reliance on Section 17(b) as the purported source of 22nd Century's duty to disclose the promotional articles is misplaced.

Plaintiffs ignore this precedent, and the plain language of Section 17(b), and mistakenly argue 22nd Century had a duty to disclose in its SEC filings that third-party authors may receive, but not disclose, payments for articles about the Company as a reason why 22nd Century's stock may be volatile. Dkt. 27 at 28-29. Of course, Plaintiffs do not even attempt to explain why a third-party author's nondisclosure of payment would make the Company's stock volatile. Nevertheless, the out-of-circuit district court cases Plaintiffs rely upon to support this argument are distinguishable.

In each of the cases Plaintiffs cite, the Court found defendants engaged in a scheme to defraud because defendants were directly involved with the promotional companies. *See Rabkin*, 2018 WL 905862 at *16-17 (defendants were executives of issuer *and* promoter and there was "lucrative agreement" between corporate defendant and promoter); *In re Galena*, 117 F. Supp. 3d at 1193-94 (defendants paid promoters in stock options, in violation of company policy, and hid payments); *MAZ*

21

*Partners LP v. First Choice Healthcare Sols., Inc.*, No. 6:19-CV-619-Orl-40LRH, 2020 WL 1072582, at *1 (M.D. Fla. Feb. 14, 2020), *adopting R. & R.*, 2019 WL 5394011, at *3 (M.D. Fla. Oct. 16, 2019) (defendant had a duty to disclose scheme to defraud investors where scheme involved manipulative trades to inflate share price and using "boiler rooms" to market stock to elderly retail investors and thereby inflate price); *In re CytRx*, 2015 WL 5031232 at *12 (defendants *expressly instructed* authors not to disclose their payments and actively covered up payments). Further, contrary to Plaintiffs' contention, *CytRx* did *not* hold that defendants' disclosure of certain risk factors required it to disclose *all* potential risk factors, but only that defendants there should have disclosed articles in explanation "regarding how and why the Company's stock price was so dramatically increasing." 2015 WL 5031232 at *10.

Here, as explained in Section II, *infra*, and as the District Court held (SPA-4), 22nd Century never engaged in a scheme to inflate its share price. Instead, 22nd Century hired a third-party investor relations company, IRTH, which allegedly hired authors to promote 22nd Century. That some of those authors allegedly did not disclose they were compensated does not transform permissible investor relations activities into a scheme to defraud. Certainly, such conduct is *nothing like* the scheme described in *MAZ Partners*, where defendants "engaged in manipulative trades designed to artificially increase the trading volume and market price of

22

[defendant's] common stock while their co-conspirators simultaneously sold their shares at the inflated price[,]" leading to a criminal indictment for, *inter alia*, wire fraud and money laundering. *See MAZ Partners*, 2019 WL 5394011 at *3.

This case is much more like *Galectin*. 843 F.3d at 1266-68.[11] There, as here, the plaintiffs alleged that the defendant paid for promotional articles, thus rendering false its statement that it had not engaged in market manipulation. *Id.* The Court rejected this claim because "paying for promotional articles does not constitute price 'manipulation'" and "was clearly permissible under Rules 10b-5(a) and (c)." *Id.* Here, Plaintiffs contend 22nd Century's risk disclosures misleadingly omitted the purported stock promotion scheme, but it "was clearly permissible under Rules 10b-5(a) and (c)" for the Company to hire IRTH and for IRTH, in turn, allegedly to hire stock promoters. *See id.* Thus, there was no "scheme" for 22nd Century to disclose, and the District Court correctly dismissed Count I to the extent that it was based on the risk disclosures in 22nd Century's SEC filings.

---

[11] Plaintiffs try to distinguish *Galectin* because it did not address risk disclosures. Dkt. 27 at 30-31. However, *Galectin* involved an express *denial* of any market manipulation. Plaintiffs also attempt to distinguish *Cortina* on this ground. But the Company's risk disclosures, allegedly rendered misleading by the absence of a disclosure regarding a non-existent scheme to defraud, are akin to the disclosures in *Cortina*.

**B.** **22nd Century Was Not Required to Disclose the Alleged SEC Investigation.**

The District Court appropriately held 22nd Century had no duty to disclose the alleged 2016 SEC investigation into previously disclosed and fully remediated accounting weaknesses. SPA-4. Plaintiffs assign error to this holding, arguing the Company's statements regarding those accounting weaknesses were rendered misleading since 22nd Century did not disclose the purported investigation, which led to no fines or penalties. Dkt. 27 at 31. Plaintiffs are wrong.

Plaintiffs' opening brief is the first time they even so much as suggest that the SEC investigation was not disclosed in an effort to inflate the value of the Company's secondary offerings. *Id.* at 32.[12] Regardless, this new suggestion does not alter the result: 22nd Century's SEC filings were not rendered misleading because the Company did not disclose the alleged SEC investigation, "uncharged, unadjudicated" conduct. *In re Lions Gate*, 165 F. Supp. 3d at 12. In *Lions Gate*, the defendants received Wells Notices and subpoenas from the SEC, but the Court found

---

[12] Plaintiffs' assertion that the nondisclosure of the purported SEC investigation "signaled to investors . . . that the weakness was minor" (Dkt. 27 at 34) is supposition unsupported by fact or law; 22nd Century never stated whether the weaknesses were "minor," but it did disclose exactly what those weaknesses were, and how they were remediated. What is more, Plaintiffs mistakenly argue the SEC investigation should have been disclosed because it may have "significantly altered the 'total mix' of information" available to investors (*id.* at 32), but "Plaintiff[s] conflate[] the purported materiality of the omissions with" a duty to disclose. *In re Veon Ltd. Sec. Litig.*, No. 15-CV-08672, 2021 WL 930478, at *6 (S.D.N.Y. Mar. 11, 2021). "Even assuming *arguendo* that the omissions are material as Lead Plaintiff posits, [a] corporation does not have a duty to disclose information simply because it is material." *Id.* (citation and quotation marks omitted, alteration in original).

"the defendants did not have a duty to disclose the SEC investigation and Wells Notices" in their SEC filings. The Court explained that "a government investigation, without more, does not trigger a generalized duty to disclose." *Id.*

Similarly, in *In re Inv. Technology Group, Inc. Securities Litigation*, 251 F. Supp. 3d 596, 616 (S.D.N.Y. 2017), the defendant did not disclose an SEC investigation, but its SEC filings stated the company was periodically subject to regulatory investigations. The plaintiffs argued such statements created a duty to disclose a current SEC investigation, but the Court denied plaintiffs' claim, finding the statements regarding regular government investigations were not so incomplete as to mislead. *Id.*; *see also Ulbricht v. Ternium S.A.*, No. 18-CV-6801, 2020 WL 5517313, at *8 (E.D.N.Y. Sept. 14, 2020) (rejecting claim that defendants had duty to disclose bribery scheme where defendants disclosed "dispute" regarding certain payments, but did not reveal "dispute" was illegal bribery); *In re XP Inc. Sec. Litig.*, No. 20-CV-1502, 2021 WL 861917, at *9 (E.D.N.Y. Mar. 8, 2021) ("[G]overnment investigation, without more, does not trigger a generalized duty to disclose.").

Plaintiffs point to *In re Mylan N.V. Securities Litigation*, No. 16-CV-7926, 2018 WL 1595985, at *12 (S.D.N.Y. Mar. 28, 2018), to support their contention that the Company should have disclosed the SEC investigation. But *Mylan* presents starkly different facts. There, plaintiffs claimed the defendants statements indicating its rebate rate "had not yet been contradicted by [Centers for Medicare & Medicaid

25

Services]" was misleading because, in reality, defendants knew CMS "had already taken a position contrary to [defendant]'s" regarding the rebate rate, and the Department of Justice had issued a subpoena relating to that issue. *Id.* at \*9, 12. The Court agreed, finding defendants' statements implied no unfavorable actions as to the rebate rate had been taken, when in fact that was not true. *Id.* at \*10. Likewise, in *In re China Valves Technology Securities Litigation*, 979 F. Supp. 2d 395 (S.D.N.Y. 2013), the plaintiffs alleged the defendant failed to disclose that a company the defendant acquired was subject to an FCPA investigation when the defendant acquired it. *Id.* at 402. The Court found the defendant should have disclosed the investigation because "the FCPA violations may have led to inflated revenues, thereby 'making future earnings potential uncertain' . . . and because a violation could have resulted 'in substantial penalties and liabilities' to [defendant] . . . ." *Id.* at 409.

Here, in contrast to *Mylan* and *China Valves*, Plaintiffs cannot identify *why* disclosure of the underlying accounting weaknesses, and their remediation, but not the SEC investigation, rendered anything in the Company's SEC filings misleading. As such, the District Court appropriately found 22nd Century had no duty to disclose the alleged SEC investigation.

**C.    The Press Releases Contain No Actionable Misstatements or Omissions.**

The District Court properly concluded that nothing in 22nd Century's Press Releases was misleading.[13] Plaintiffs contend the Press Releases contained false, actionable misstatements because, by calling the short seller articles "highly deceptive . . . smear campaigns" that attempted to link 22nd Century to unrelated stock promoters, the Press Releases deny the Company's "illegal promotional article campaign." Dkt. 27 at 36. However, this statement is *not* a denial that the Company used promotional articles.[14] Further, nothing in the Press Releases created a duty to disclose that the alleged promotional articles omitted the requisite disclosures— information Defendants are not even alleged to have known.

Likewise, the Press Releases' statement that 22nd Century was unaware of any SEC enforcement proceeding was not false or misleading. A-74 ¶¶ 189-90. *See In re PolarityTE, Inc., Sec. Litig.*, No. 2:18-CV-00510, 2020 WL 6873798, at *13 (D. Utah Nov. 22, 2020) (statement "that no 'governmental proceedings are pending against us or, to our knowledge, contemplated against us,'" not false or misleading where defendant did not disclose "that it had previously received a document request

---

[13] The Amended Complaint does not allege that the Press Releases contained false statements, but only that they created a duty to disclose the article payments and the purported SEC investigation. A-73-75 ¶¶ 186-91.

[14] This statement is also an inactionable opinion. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 182-83 (2015).

from the SEC"). Despite failing to allege any SEC enforcement proceeding, Plaintiffs contend 22nd Century's statements were false because "the SEC's 2016 investigation [] had never been closed." Dkt. 27 at 37. But the Amended Complaint fails to plead any facts showing the SEC's purported 2016 investigation into the Company's accounting weaknesses—remediated years ago—was ongoing when the Press Releases were issued in 2018 and 2019. Moreover, that 22nd Century was not aware of any *enforcement proceeding* in *2018* is consistent with, and thus did not create a duty to disclose, an alleged SEC *investigation years earlier*. *See In re PolarityTE, Inc., Sec. Litig.*, No. 2:18-CV-00510, 2020 WL 6873798, at *13 (D. Utah Nov. 22, 2020) (statement that "no governmental proceedings are pending against [defendant]" not rendered false or misleading by undisclosed document request from SEC because an investigation on its own is not a 'pending legal proceeding' until it reaches a stage when the agency or prosecutorial authority makes known that it is contemplating filing suit or bringing charges." (quotation marks omitted) (*accord In Re Lions Gate Entertainment Corp. Secs. Litig.*, 165 F. Supp. 3d 1, 18 (S.D.N.Y. 2016)); *cf. Brady v. Top Ships Inc.*, No. 17-CV-4987, 2019 WL 3553999, at *31 (E.D.N.Y. Aug. 5, 2019) *aff'd sub nom. Onel v. Top Ships, Inc.*, 806 F. App'x 64 (2d Cir. 2020) (that company received SEC subpoena not contradictory to statements regarding defendant's use of funds and business strategy).

28

Plaintiffs also rely on *In re BioScrip, Inc. Securities Litigation*, 95 F. Supp. 3d 711, 727 (S.D.N.Y. 2015) to support their flawed contention that the Press Releases were misleading because they failed to disclose the alleged SEC investigation. However, *BioScrip* is plainly distinguishable. There, the defendant received a Civil Investigative Demand from the United States Attorneys' Office and, in simultaneous filings, stated it could provide "no assurance that we will not *receive subpoenas or be requested to produce documents* in pending investigations" but did not advise investors that it had received such a document demand. *Id.* at 727. This statement was misleading because it gave the impression that defendants were not presently facing such a demand. Here, though, the Company *was not* actively responding to, or involved in, an SEC investigation, and it was not misleading to state as much in the Press Releases. Thus, the District Court appropriately dismissed Count I to the extent that it was based upon the Press Releases.

## II.   The District Court Correctly Found that the Alleged Conduct Did Not Constitute Market Manipulation.

To plead a claim for market manipulation under Rule 10b-5(a) or (c), the plaintiff must allege: (1) a manipulative act; (2) committed by the defendant with scienter; (3) in connection with the purchase or sale of a security; and (4) economic loss; and (5) caused by the plaintiff's justifiable reliance on an efficient market free

of manipulation. *ATSI Commc'ns*, 493 F.3d at 101.[15] "'Manipulation' is 'virtually a term of art when used in connection with securities markets'" (*Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976)), "refer[ing] generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity," (*id*.) and "'connot[ing] intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities.'" *ATSI*, 493 F.3d at 100 (quoting *Ernst*, 425 U.S. at 199). Further, to state a claim for market manipulation, plaintiffs must plead defendants engaged in "market activity" and "cannot be based solely upon misrepresentations or omissions." *Id.* at 100-01. This Court has clearly stated that "where the sole basis for [market manipulation] claims is alleged misrepresentations or omissions, plaintiffs have not made out a market manipulation claim under Rule 10b–5(a) and (c)." *Lentell v. Merrill Lynch & Co*., 396 F.3d 161, 177 (2d Cir. 2005).

As the District Court held, Count II of the Amended Complaint fails to satisfy these requirements. Specifically, the District Court correctly found Plaintiffs failed to plead a manipulative act or market activity, as required to state a claim for market manipulation under Rule 10b-5(a) or (c). SPA-4. In the absence of any manipulative

---

[15] "Because a claim for market manipulation is a claim for fraud, it must be pled with particularity under Rule 9(b)." *ATSI Commc'ns*, 493 F.3d. at 101.

act or market activity, Plaintiffs cannot state a claim for market manipulation. Because the District Court found the Amended Complaint's allegations cannot demonstrate a manipulative act or market activity, the District Court properly denied leave to amend.

Plaintiffs argue this Court should reverse because the Amended Complaint pleads "'manipulative acts' *or* 'market activity'" because 22nd Century hired an investor relations firm that, in turn, hired authors to write articles about 22nd Century, some of whom allegedly did not disclose they received payments, 22nd Century "rigged" the market. Dkt. 27 at 38-39.[16] Plaintiffs misstate what is required to state a claim under Rule 10b-5(a) or (c); the plaintiff must plead manipulative *market activity*, not "'manipulative acts' *or* 'market activity.'" *ATSI Comm'cns.*, 493 F.3d at 100 ("[C]ase law in this circuit and elsewhere has required a showing that an alleged manipulator engaged in market activity aimed at deceiving investors as to how other market participants have valued a security."). Where, as here, the alleged manipulation is nothing more than a misstatement or omission, a claim under Rule 10b-5(a) or (c) must be dismissed. *See Lentell*, 396 F.3d at 177.

---

[16] Plaintiffs' opening brief incorrectly asserts the Amended Complaint alleges Defendants published, "edited and approved the articles," but this is not so. Dkt. 27 at 39. The Amended Complaint actually alleges Mr. Sicignano *must have* "review[ed], edit[ed], *and/or* approv[ed]" the articles *because* Sicignano was intensely focused on everything that was said publicly about the Company." A-34 ¶ 68. Likewise, the Amended Complaint does not allege Defendants "published" the articles, but rather "published, *or caused to be published*" the articles. A-66-72 ¶¶162-84.

Courts in this circuit and elsewhere have expressly held placing promotional articles, even if they do not disclose that authors received payments, does not amount to market manipulation. *E.g.*, *Cortina*, 2016 WL 7480415 at *3-5. In *Cortina*, the Court dismissed the plaintiff's claim that defendants' participation in a purported paid promotional scheme constituted market manipulation. *Id*. at *4. The Court noted that, as here, the plaintiffs failed "to identify a single bulletin, video, newsletter, or report written by, edited by, or commissioned by Defendants" and instead attempted to rely upon "broad and conclusory innuendo to place" the defendants behind the purported scheme. *Id*. The Court found allegations that a defendant "orchestrated [a paid-promotional] scheme" are insufficient to plead a manipulative act. *Id.* at 5.

Similarly, in *Galectin*, 843 F.3d at 1263, as here, the plaintiffs alleged the defendants' hiring of stock promoters who touted the company's stock amounted to a scheme to defraud. The Eleventh Circuit affirmed the district court's denial of plaintiffs' claim because "paying for promotional articles does not constitute price manipulation" and "was clearly permissible under Rules 10b-5(a) and (c)." *Id.* at 1268. The Court further found the plaintiff did not allege the defendant "engaged in any kind of simulated market activity or transactions designed to 'create an unnatural and unwarranted appearance of market activity,' which is required to constitute market manipulation." *Id.* at 1273 (quoting *Santa Fe*, 430 U.S. at 476-77).

32

Plaintiffs ignore these cases and ask this Court to rely on two factually distinguishable cases. In *Rabkin*, 2018 WL 905862 at *16-17, the complaint alleged the existence of a "lucrative agreement" between a corporate defendant and the promotional company and identified "specific instances" where the defendants *concealed* compensation to authors. Likewise, in *SEC v. Contrarian Press, LLC*, No. 16-CV-6964, 2019 WL 1172268, at *1 (S.D.N.Y. Mar. 13, 2019), the defendant was a major shareholder in the promoted issuer *and* "*the founder, owner, and President*" of the publishing company defendant that promoted the issuer's stock. What is more, the defendant *authored* the promotional pieces and *disclaimed* any compensation for the articles. *Id.* at *2. Still, though, the SEC only pursued 10b-5(b) claims for this misconduct. *Id.* at *5. The Court upheld the 10b-5(a) and (c) claim because the defendants, in a subsequent scheme, created a shell company to conceal their involvement in the fraud, had the issuer's employees author articles to promote the issuer while hiding their identities, and reissued invoices in furtherance of the scheme. *Id.* at *6.

Simply put, the facts of *Rabkin* and *Contrarian Press* are a far cry from Plaintiffs' allegations that 22nd Century hired IRTH to promote its stock, and IRTH then hired third parties to write articles about the Company, but some of those articles allegedly lacked the requisite disclosures. The conduct about which

Plaintiffs complain does not, and cannot, amount to market manipulation, thus this Court should affirm the District Court's dismissal of Count II with prejudice.

## III. Because Plaintiffs' Failed to Plead the Requisite Violation of Rule 10b-5, the Court Appropriately Dismissed the Section 20(a) Claim.

The District Court correctly dismissed Plaintiffs' Section 20(a) claim on the ground that Plaintiffs' underlying claims for primary securities law violations failed. SPA-5; *see also ATSI Commc'ns*, 493 F.3d at 108 ("To establish a prima facie case of control person liability, a plaintiff mush show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud."). Additionally, the Amended Complaint fails to allege any facts demonstrating conscious misbehavior or recklessness by Messrs. Sicignano or Brodfuehrer as culpable participants in the purported fraud. *See Mishkin v. Ageloff*, No. 97 Civ. 2690, 1998 WL 651065, at \*24-25 (S.D.N.Y. Sept. 23, 1998). As discussed in Section IV below, the Amended Complaint's scienter allegations fall woefully short. Thus, Plaintiffs have failed to show not only the requisite primary violation, but also culpable participation by Messrs. Sicignano and Brodfuehrer.

## IV. Plaintiffs Cannot Establish Scienter or Loss Causation.

Because the District Court found Counts I-III failed because Defendants had no duty to disclose the allegedly omitted information, the District Court did not need to, and indeed did not, address Defendants' scienter and loss causation arguments.

SPA-5, n.1; A-462. However, the Amended Complaint also fails to plead facts supporting scienter and loss causation, each of which independently justify dismissal. Thus, this Court may also affirm the District Court's decision based on the Amended Complaint's failure to plead scienter and loss causation, as set forth in Defendants' Motion to Dismiss. *See* A-120-126; A-437-440; *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 78 (2d Cir. 2017) ("'It is well settled that [this Court] may affirm [a district court's decision] on any grounds for which there is a record sufficient to permit conclusions of law, including grounds not relied upon by the district court.'"); *In re Tingling*, 990 F.3d 304, 307 (2d Cir. 2021) (noting the Court is free to affirm the district court's decision on grounds the Court did not reach).

### A. Plaintiffs' Perfunctory Scienter Allegations are Insufficient.

Rule 9(b) and the PSLRA require plaintiffs to plead facts giving rise to "strong inference" of scienter, meaning that it is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs v. Makor Issues & Rights*, 551 U.S. 308, 314 (2007); *accord ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F. 3d 187, 198 (2d Cir. 2009); 15 U.S.C. § 78u-4(b)(2). Because the Amended Complaint is devoid of any factual allegations that Defendants acted with scienter, it was properly dismissed. *See Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago ex rel Policemen's Annuity &*

35

*Benefit Fund of Chicago v. FXCM Inc*., 767 Fed. App'x 139 (2d Cir. 2019) (upholding dismissal because plaintiffs failed to allege scienter).

Plaintiffs may establish scienter by pleading facts "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI*, 493 F.3d at 99. Scienter is insufficiently pled unless the facts alleged support an inference of scienter that is "cogent and *at least as compelling* as any opposing inference." *Tellabs*, 551 U.S. at 322-24. The Amended Complaint fails to plead facts supporting an inference of motive and opportunity to defraud or conscious misbehavior or recklessness and thus fails to plead scienter.

### 1. Plaintiffs Have Not Pled Motive and Opportunity to Defraud.

Pleading motive and opportunity requires pleading that the defendants benefited in a "*concrete* and *personal* way from the purported fraud." *Novak v. Kasaks*, 216 F.3d 300, 307-08 (2d Cir. 2000); *Shields v. Citytrust Bancorp, Inc*., 25 F.3d 1124, 1130 (2d Cir. 1994) (motive and opportunity means "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged. Opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged."). This standard requires pleading more than "motives possessed by virtually all corporate insiders," like the desire to maintain "a high corporate credit rating" or "a high stock price in order to increase

executive compensation." *Novak*, 216 F.3d at 307. Rather, "concrete and personal" benefits are benefits such as profiting from insider sales. *Cortina*, 2016 WL 7480415 at *6; *Kalnit v. Eichler*, 264 F.3d 131, 141-42 (2d Cir. 2001) (plaintiffs must show a "specific benefit that would inure to the defendants that would not be either generalized to all corporate directors or beneficial to all shareholders."). "Courts have . . . described 'a desire to raise much needed capital' as amongst the broadest, most generalized, and most commonplace motives of corporate motivation for any action." *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2005 WL 2277476, at *19 (E.D.N.Y. Sept. 19, 2005); *see San Leandro Emergency Med. Grp. Profit Sharing v. Philip Morris Cos., Inc.*, 75 F.3d 801, 814 (2d Cir. 1996); *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 531 (S.D.N.Y. 2009), *aff'd*, *Condra v. PXRE Grp. Ltd.*, 357 Fed. App'x 393 (2d Cir. 2009).

To support their scienter allegations, Plaintiffs claim Messrs. Sicignano and Brodfuehrer possessed the motive and opportunity to defraud because they wanted to inflate the Company's stock price and Mr. Sicignano received a bonus in October 2017. These allegations are patently insufficient to establish motive and opportunity to defraud. "'[A] desire to raise much needed' capital is an insufficient generalized motive to support an inference of scienter." *In re Emex Corp. Sec. Litig.*, No. 01 Civ. 4886, 2002 WL 31093612, at *6 (S.D.N.Y. Sept. 18, 2002) ([P]laintiffs failed to plead scienter where they "only allege[d] defendants committed fraud in order to

increase the share price . . . in advance of a rights offering and a proposed sale of common stock.") (citation omitted). Likewise, allegations that corporate officers simply sought to increase their compensation are too ambiguous to meet the requirements of the PSLRA. *See In re Quintel Entm't Inc. Sec. Litig.*, 72 F. Supp. 2d 283, 296 (S.D.N.Y. 1999); *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) ("Plaintiffs' allegation that defendants were motivated to defraud the public because an inflated stock price would increase their compensation is without merit. If scienter could be pleaded on that basis alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions."). Yet, a motive to raise capital is all Plaintiffs allege.[17]

The cases Plaintiffs cite to support the sufficiency of their perfunctory motive and opportunity allegations are consistent with the well-settled rule that pleading motive requires a particularized benefit. For example, *In re Time Warner.*, 9 F.3d at 269 (distinguished in *Kalnit*, 264 F.3d at 141-42), the plaintiff plead the defendant's motive was to lessen the dilutive effect of its stock offering and "avoid jeopardizing talks with prospective partners," not just maintaining a decent stock price or executive compensation. Likewise, in *In re American Bank Note Holographics, Inc.*

---

[17] In their opening brief, Plaintiffs argue for the first time that Mr. Sicignano's limited salary increase and bonus were akin to a "pump-and-dump" scheme to unload stock while the value is artificially inflated. Receiving an increase in compensation is wholly different from a "pump-and-dump" scheme, and does not satisfy the scienter standard.

*Securities Litigation*, 93 F. Supp. 2d 424, 431 (S.D.N.Y. 2000), the Court found the plaintiffs adequately alleged scienter as to certain defendants who used an IPO to resolve *specific* debt and announced that the IPO would be used *for that purpose*. In contrast, the Court found insufficient the plaintiffs' motive allegations against individual defendants where the alleged motive was to "raise badly needed funds[.]" *Id.* at 445; *see also In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158 (S.D.N.Y. 2003) (motive to acquire companies); *In re Twinlab Corp. Sec. Litig.*, 103 F. Supp. 2d 193 (E.D.N.Y. 2000) (motive to retire debt and increase value of stock for specific exchange for another company's stock). Moreover, in *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 264 (5th Cir.), *opinion modified on denial of reh'g*, 409 F.3d 653 (5th Cir. 2005), the Court found sufficient facts pleading conscious misbehavior and recklessness, *not* motive and opportunity to defraud, established scienter. The Court simply mentioned the defendants' bonuses *and stock sales profits* should be considered alongside the facts showing recklessness. *Id.*

Here, Plaintiffs do not assert that Messrs. Brodfuehrer or Sicignano received the requisite concrete or personal benefit from the alleged omissions or purported scheme. Indeed, as in *Cortina*, "Plaintiffs make no allegation that any Defendant sold shares during the Class Period." 2016 WL 7480415 at *6*. Instead, Plaintiffs assert the purported fraud was supposedly motivated by a desire to increase the Company's share price, which would increase returns from a stock offering long

after the alleged scheme began. A-32 ¶ 64. Such generalized, legitimate business motives common to all corporations are not concrete, personal benefits and are thus inadequate to plead motive under Rule 9(b) or the PSLRA. *See Cortina*, 2016 WL 7480415 at *6; *Kalnit*, 264 F.3d at 139-42; *Foley v. Transocean Ltd.*, 861 F. Supp. 2d 197, 209 (S.D.N.Y. 2012) (holding motives common to all corporations and corporate officers "do not constitute motive for the purposes of" pleading scienter). The Amended Complaint thus fails to plead motive and opportunity.

### 2. Plaintiffs Have Not Pled Conscious Misbehavior or Recklessness.

"Having failed to demonstrate a remotely plausible, personalized motive, Plaintiffs must make an even stronger showing of intent using other facts." *In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 531, (S.D.N.Y. 2020); *ECA, Local 134 IBEW*, 553 F.3d at 199 (where plaintiffs do not plead motive, "strength of the circumstantial allegations must be correspondingly greater"). Pleading strong circumstantial evidence of conscious misbehavior or recklessness requires plaintiffs to plead facts demonstrating that the defendant engaged in "highly unreasonable" conduct representing "an extreme departure from the standards of ordinary care." *Novak*, 216 F.3d at 308 (citations and quotation marks omitted). "Scienter cannot be inferred solely from the fact that, due to the defendants' board membership or executive managerial position, they had access to the company's internal documentation as well as any adverse information." *Foley*, 861 F. Supp. 2d at 212.

40

Plaintiffs fail to meet this high standard. Not disclosing that anonymous authors had allegedly omitted payment disclosures is not "highly unreasonable" conduct amounting to "an extreme departure from the standards of ordinary care"— especially given that the Company had no duty to do so and was unaware the articles existed, let alone lacked the requisite disclosures. *Novak*, 216 F.3d at 308. Plaintiffs assert in their opening brief that Mr. Sicignano "told CW1 about the scheme," but what the cited paragraphs of the Amended Complaint actually alleges is that Mr. Sicignano was trying to bolster the Company's stock price so it could be listed on the Russell Index. *Compare* Dkt. 27 at 44 *with* A-32-33 ¶¶ 64-67.

Nor do Plaintiffs meet this standard by alleging the nondisclosure of a purported SEC investigation that imposed no penalties, which the Company likewise had no duty to disclose, detailed disclosures of the underlying accounting issue. Further, Plaintiffs' contention that Messrs. Sicignano and Brodfuehrer knew of a purported *2016* SEC investigation fails to establish conscious misbehavior in stating, *in 2018 and 2019*, that the Company was unaware of any SEC enforcement proceeding. Knowledge of a purported 2016 SEC investigation does not establish knowledge that an investigation allegedly was continuing *years later*, much less show that Defendants were "highly unreasonable" in stating they were unaware of SEC enforcement proceedings at this later date. *See Novak*, 216 F.3d at 308.

41

To support their arguments, Plaintiffs once again rely on inapposite and distinguishable case law. For instance, in *Rabkin*, 2018 WL 905862, at \*12, the Court applied the core operations doctrine (which has not been accepted in this circuit) to find the plaintiff sufficiently imputed scienter to the defendant-CFO; the Court did *not* find the plaintiffs allegations sufficient to plead conscious misbehavior or recklessness as to the defendant-CFO. *See also In re CytRx*, 2015 WL 5031232, at \*10 (scienter pled where plaintiffs alleged direct involvement in scheme to defraud); *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 426 (S.D.N.Y. 2003) (allegations sufficient to show scienter where complaint alleged how and why defendants' knew specific statements were false). Similarly, in *City of Sterling Heights Police & Fire Retirement System v. Abbey National, PLC*, 423 F. Supp. 2d 348, 361-62 (S.D.N.Y. 2006), the plaintiffs alleged defendant misrepresented the health of its investments and established recklessness as to the truth of the statements regarding those investments because, *inter alia*, there was substantial press coverage regarding the collapse of companies in which the defendant was invested, and the defendant committed a multitude of GAAP violations.

Here, the Amended Complaint's vague, conclusory, and tenuous attempts to allege scienter demonstrate the futility of Plaintiffs' claims, and require dismissal. *See ECA, Local 134 IBEW*, 553 F. 3d at 198.

42

### 3. Plaintiffs' Reliance on the Core Operations Doctrine Fails.

Plaintiffs mistakenly contend that the core operations doctrine supports a strong inference of scienter. Dkt. 27 at 45-50. This argument fails for two reasons. First, this Court has yet to determine "whether, and in what form, the 'core operations' doctrine survives as a viable theory of scienter." *Fredrick v. Mechel OAO*, 475 Fed. App'x 353, 356 (2d Cir. 2012); *see also Woolgar v. Kingstone Cos., Inc.*, 477 F. Supp. 3d 193, 239 (S.D.N.Y. 2020) (core operations doctrine "'at most'" constitutes supplemental support for scienter allegations). Plaintiffs' citation of *New Orleans Employees Retirement System v. Celestica, Inc.*, 455 F. App'x 10, 14, n.3 (2d Cir. 2011), Dkt. 27 at 46, to suggest that the doctrine survives is simply incorrect; the *Celestica* Court specifically noted that it would not address defendants' arguments regarding the core operations doctrine because it found other scienter allegations sufficient.

Second, even if that doctrine were viable, the alleged omissions of disclosures from the articles or the existence of an SEC investigation are not matters core to 22nd Century's business. The Amended Complaint fails to allege Defendants even were aware that IRTH allegedly paid third-party authors to write articles about 22nd Century, let alone that such information was "critical to the core function" of the Company. *In re AT&T/DirecTV Now Sec. Litig.*, No. 19-CV-2892 (VEC), 2020 WL 4909718 (S.D.N.Y. Aug. 18, 2020) (quotation marks omitted). Likewise, an alleged

SEC investigation, which led to no fines or penalties of any kind, is hardly "critical to the core function" of 22nd Century. *Id.*

To support the core operations argument, Plaintiffs contend the Company issued the Press Releases to "conceal the[] scheme." Dkt. 27 at 46-47. As explained above, that independent, positive articles were published is perfectly consistent with *also* having sought promotional coverage. And the statement that 22nd Century was not aware of any *enforcement proceeding in 2018* was perfectly consistent with an SEC *investigation or inquiry years earlier*. Likewise, the allegation that Mr. Sicignano would not let his computer be connected to Company network does not yield a reasonable inference, despite Plaintiffs' unsupported speculation, that he wanted to "conceal his misconduct." *Id.* at 47.[18] Nor does the allegation that Defendants allegedly knew Fuzzy Panda was former CEO Joseph Pandolfino (*id.*) support scienter, and Plaintiffs do not even allege it was material information that the Company had a duty to disclose. Allegations that articles were published using pseudonyms, or posted on Seeking Alpha and TheStreet, which prohibit articles by paid promoters, (*id.*) is likewise deficient, especially where the Amended Complaint does not allege that Defendants knew articles about 22nd Century were being posted,

---

[18] Plaintiffs cite *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 652 (S.D.N.Y. 2007) to support the allegation that Mr. Sicignano's alleged reluctance to connect his computer to the Company network supports scienter. But the "suspicious" conduct in that case were large, abnormally timed related entity transactions, and the Court even held a "suspiciously large severance payment . . . [does not] raise an inference of scienter." *Id.* at 651.

let alone under pseudonyms or on those websites, much less that the articles omitted the authors' payment disclosures.

Similarly, the allegation that Messrs. Sicignano and Brodfuehrer's resignations support scienter is baseless. "There are any number of reasons that an executive might resign" *Woolgar*, 477 F. Supp. 3d at 240 (citation and quotation marks omitted). Even when "suspicious" (*id.*), "[a]brupt resignations . . . amidst bad financial news . . . are not surprising. After all, it is axiomatic that nascent companies with uncertain futures are especially prone to turnover." *In re HEXO Corp. Sec. Litig.*, No. 19 CIV. 10965, 2021 WL 878589, at *21 (S.D.N.Y. Mar. 8, 2021) (citation and quotation marks omitted). As in *HEXO*, Plaintiffs provide no facts to support their suspicions that Messrs. Sicignano and Brodfuehrer resigned for anything other than purely personal reasons. *See id.*; *see also In re Ferrellgas Partners, L.P., Sec. Litig.*, No. 16 Civ. 7840, 2018 WL 2081859, at *19 (S.D.N.Y. Mar. 30, 2018), *aff'd*, 764 F. App'x 127 (2d Cir. 2019) (citing cases and finding resignations do not support scienter). Thus, these allegations do not support scienter.

Finally, the allegation that Mr. Brodfuehrer supposedly was uncomfortable signing the Company's SEC filings "because of Defendant Sicignano" (Dkt. 27 at 10) falls far short of alleging a consciousness of the purported scheme alleged in the

45

Amended Complaint.[19] Because Plaintiffs' vague, conclusory, and tenuous attempts to allege individual scienter are insufficient, there is no scienter to attribute to 22nd Century. *Cf. In re VEON Ltd. Sec. Litig.*, No. 15-CV-08672, 2017 WL 4162342, at *10 (S.D.N.Y. Sept. 19, 2017) (bribery scheme carried out by executives sufficient to impute scienter to corporation). As in *Teamsters Local 445 Freight Division Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 195 (2d Cir. 2008), Plaintiffs have failed to raise a plausible inference of 22nd Century's scienter, and this alone warrants affirming the District Court's order.

## B. The Amended Complaint Does Not Adequately Allege Loss Causation.

Plaintiffs' failure to plead facts establishing a causal link between Defendants' alleged misconduct and Plaintiffs' purported harm is another, independent ground to affirm the District Court's decision.

The failure to allege "something beyond the mere possibility of loss causation"—i.e., a causal link between Defendants' misconduct and Plaintiffs' harm—requires dismissal. *Twombly*, 550 U.S. at 557; *Lentell*, 396 F.3d at 172. Loss causation requires plaintiffs to identify: (1) a corrective disclosure that revealed

---

[19] Plaintiffs also contend that Messrs. Sicignano and Brodfuehrer's signing of the Company's SEC filings supports scienter. This argument lacks any merit, as the SEC filings were entirely accurate. Further, the case Plaintiffs cite to support the argument that signing an SEC filing may support scienter, *In re Cabletron Sys., Inc.*, 311 F.3d 11, 41 (1st Cir. 2002) does not even address that issue. In *Cabletron*, the Court noted that outside directors could be liable for the contents of SEC filings they signed, not that signing such filings may indicate scienter. *Id.*

improperly hidden information; or (2) materialization of a concealed risk, either of which foreseeably caused the stock price to drop. *Lentell*, 396 F.3d at 173-74. "Alleging that the market reacted negatively to new information about a publicly-traded company, without more, is insufficient to plead loss causation . . . ." *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 173 n.30 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016) (citing *Dura Pharm.*, 544 U.S. at 345); *see also In re Sterling Foster & Co., Inc. Sec. Litig.*, 222 F. Supp. 2d 289, 308 (E.D.N.Y. 2002) (dismissing market manipulation claim for failure to plead loss causation). The Amended Complaint (and opening brief) conflate the two avenues of loss causation but nevertheless fail to establish loss causation via a corrective disclosure or materialization of a concealed risk.

Plaintiffs contend the short seller reports constitute corrective disclosures because they revealed that certain authors did not disclose they allegedly were paid by a third party for articles about the Company and revealed a years-old SEC investigation that resulted in no penalties. Dkt. 27 at 50-51. But the revelation of allegedly paid promotional articles or the existence of a regulatory investigation is not a corrective disclosure, especially when, as here, "there is no logical connection between" the alleged investigation and the defendants' alleged fraud. *Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd*., 886 F. Supp. 2d 328, 338 (S.D.N.Y. 2012); *see also Meyer v. Greene*, 710 F.3d 1189,

1201 (11th Cir. 2013). Nor does an investigation into potential wrongdoing establish that such wrongdoing actually occurred. *See Meyer*, 710 F.3d at 1201. Indeed, *Rabkin* reiterated Defendants' point as to the SEC investigation: "the announcement of an investigation, standing alone, is insufficient to establish loss causation." 2018 WL 905862 at *15 (quoting *Loos v. Immersion Corp.*, 762 F.3d 880, 883 (9th Cir. 2014)).

Plaintiffs also argue that Mr. Sicignano's resignation and the revelation of the SEC investigation were the materializations of concealed risks of the alleged article scheme and the SEC investigation themselves. However, Mr. Sicignano's resignation was not a foreseeable consequence of the alleged failure of third-party authors to disclose that an investor relations company paid them to write articles. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 514 (2d Cir. 2010) (resignation announcement inadequate materialization of risk for purposes of pleading loss causation); *see also Lentell*, 396 F.3d at 173-73. Likewise, the alleged SEC investigation pertained to 22nd Century's lack of segregation of duties in financial reporting (A-77 ¶ 198), but Plaintiffs have not alleged that these supposed accounting weaknesses, or any alleged SEC investigation, *caused* its stock price to fall. *See Cortina*, 2016 WL 7480415 at *8.[20] A short-seller's assertion that an SEC

---

[20] Plaintiffs' cases do not rebut this foreseeability requirement. Dkt. 27 at 50-51. *See In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 252-53 (S.D.N.Y. 2007) (defendant restated its financials when its stock options backdating scheme was revealed); *In re WorldCom, Inc. Sec.*

investigation took place is not a materialization of the risk associated with an SEC investigation. What is more, Plaintiffs acknowledge that the Company contemporaneously disclosed the underlying accounting weaknesses, and their remediation. A-75-77 ¶¶ 192-97. Thus, 22nd Century's stock price already reflected the risks underlying the purported investigation.[21]

Because Plaintiffs have not, and cannot, shown how or why the disclosure that (a) certain authors allegedly received undisclosed payments for articles about the Company; or (b) the Company at one point allegedly was investigated by the SEC caused 22nd Century's stock price to fall, Plaintiffs cannot state a claim under Rule 10b-5. This failure also supports affirmance of the District Court's dismissal.

## V. Dismissal with Prejudice Was Proper.

"[T]he Second Circuit has consistently stated that district courts may deny leave to amend when plaintiffs request such leave in a cursory sentence on the last page of an opposition to a motion to dismiss, without any justification or an accompanying suggested amended pleading." *Ferrellgas*, 2018 WL 2081859 at *20

---

*Litig.*, 388 F. Supp. 2d 319, 347 (S.D.N.Y. 2005) (rejecting objection to class action settlement where objector was "highly unlikely" to be able to show his losses were due to materialization of risk); *Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir. 2001) (loss causation pled where losses caused by executive's lack of business acumen, which defendants concealed); *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 306 (S.D.N.Y. 2005) (loss causation pled where auditor failed to discover and disclose fraud and issuer when bankrupt when fraud disclosed).

[21] Plaintiffs also allege no loss caused by the Press Releases, which were issued *after* the short-seller reports, because there is no purported corrective disclosure or materialization of a concealed risk *after* the Press Releases.

(citing *City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) (affirming denial of leave to amend where plaintiffs already had one opportunity to amend their complaint and had "identified no additional facts or legal theories" to support their request to amend)); *see also Food Holdings Ltd. v. Bank of Am. Corp.*, 423 F. App'x 73, 76 (2d Cir. 2011) (affirming district court's denial of leave to amend where plaintiff requested leave to amend "on the final page of their brief in opposition to defendants' motion to dismiss, in boilerplate language and without any explanation as to why leave to amend was warranted").

Dismissal is particularly appropriate where, "[s]ignificantly, Plaintiffs offer no basis for their request for leave to amend nor do they attach a proposed amended complaint" and the complaint at issue is not the first: "this is not the first complaint in this action, since Plaintiffs filed the Consolidated Amended Complaint after their appointment, supplanting the initial complaint . . . ." *Ferrellgas*, 2018 WL 2081859 at *21; *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend is appropriate "where the request gives no clue as to how the complaint's defects would be cured"); *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 146 (2d Cir. 2018) (affirming district court's denial of leave to amend when plaintiff did not identify any additional facts or legal theories it might assert if given leave to amend); *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 506 (2d Cir. 2014) (affirming district court's denial with prejudice of

50

Plaintiff's request to amend complaint where Plaintiff "entirely failed to specify how it could cure its pleading deficiencies"); *In re Ferroglobe PLC Sec. Litig.*, No. 1:19-CV-00629, 2020 WL 6585715, at \*11 (S.D.N.Y. Nov. 10, 2020) (securities fraud complaint dismissed with prejudice where "no set of additional facts that Plaintiff could allege in support of his claim that the four categories of statements were false within the meaning of the securities laws").

This Court has specifically stated that "[a] plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine*, 758 F.3d at 505. Here, the Plaintiffs have done just that. As in *Ferrellgas*, in just one sentence in their Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, Plaintiffs perfunctorily sought leave to amend. A-274. Plaintiffs never asked for leave to amend during oral argument. *See generally* A-442-95. Nor did they attach a proposed amended complaint to any pleadings or otherwise explain how they could correct the deficiencies identified by the District Court. Indeed, even Plaintiffs' opening brief does not address this issue.[22] *See generally* Dkt. 27 at 53-54. As such, and in light of

---

[22] Plaintiffs perfunctorily assert that "they can cure any deficiencies with additional testimony from former 22nd Century and IRTH employees." First, this contention is insufficient to entitle Plaintiffs to leave to amend because it does not, and cannot, explain how it would cure the multitude of defects outlined above. Second, to the extent Plaintiffs are seeking discovery, this is prohibited under the PSLRA. 15 U.S.C. § 78u-4(b)(3)(B).

the Amended Complaint's legal failings, dismissal with prejudice was perfectly appropriate. *See Okla. L. Enforcement Ret. Sys. v. Papa John's Int'l, Inc.*, No. 18-CV-7927, 2021 WL 371401, at *13 (S.D.N.Y. Feb. 3, 2021) ("There is no reason to believe that any amendment can cure the [complaint's] deficiencies, because the statements that Plaintiff contends are actionable were not material, or false or misleading, and Plaintiff has not identified any omitted information that Defendants had an affirmative duty to disclose."). Where, as here, "nothing in the record suggests that another complaint could remedy the [Amended Complaint's] legal deficiencies" denial of leave to amend is the correct result. *In re Liberty Tax*, 828 F. App'x at 754.

## CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's judgment dismissing the Amended Complaint with prejudice.

Dated: May 17, 2021

**FOLEY & LARDNER LLP**

By: /s/ *John A. Tucker*

CHARLES C. RITTER, JR.
DUKE, HOLZAMAN, PHOTIADIS &
GRESENS LLP
701 Seneca Street, Suite 750
Buffalo, New York 14210
(716) 855-1111

    John A. Tucker
    1 Independent Dr., Suite 1300
    Jacksonville, FL 32202-5017
    Tel: (904) 359-2000
    Email:  jtucker@foley.com

    *-and-*

    */s/ Jonathan H. Friedman*
    Jonathan H. Friedman
    90 Park Avenue
    New York, NY 10016
    Tel: (212) 338-3416
    Email: jfriedman@foley.com

    *Counsel for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32.1(a)(4)(A) because this brief contains 13,001 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirement of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-Point Times New Roman.

Dated: May 17, 2021                                 */s/ John A. Tucker*